Brands Corporation, Presbyterian United States. Mr. Seeley, are you ready? May it please the Court, I'm Robert Seeley for the appellant. The appellant believes the Court of International Trade decision to tell brands against the United States should be reversed for three reasons. First, the decision is clearly erroneous in its characterization of the subject merchandise as a unitary item of cutlery, one instrument with one emery pad accessory. Second, the decision also misinterprets the tariff by classifying the subject merchandise in a heading and subheading that provides for other articles of the United States. of cutlery, but does not provide for accessories. And third, the Court misinterprets Note 1 of Chapter 82, as I will explain later. The material facts in this case... The duty would be free, and it would be... Yes, that's correct. It's not permanent. It was for a period of two or three years. And is that... Is it over now? I mean, are we talking about a historic past period? Yes, Your Honor, it's over. These were imported in 2007, I believe. But they are ongoing imports. They're ongoing imports, yes. What categories are... Is the same issue in play with respect to the ongoing goods? No, it is not. This is related to the duty-free status of this tariff during the period that Chapter 99 was in effect. So the question before us is limited to the goods imported during that limited period, and the distinction is that it's either duty-free or at a 4%. That's correct. But, of course, the remitting reclassification would have a future impact as well. As I was saying, the material facts of the case are not an issue. The merchandise is marketed under the name Pet Egg, in recognition of the egg-shaped configuration of the shell, which is divided into top and bottom half. Appellant believes that the Pet Egg consists of a set of pedicure instruments. The first instrument is comprised of the following, a thin metal sheet of... So you say it's a set of instruments, and the government, if I understand it, says there's one instrument and there are components within the instrument. What are we supposed to do? Just look at a dictionary to discern that? What gets us to your point as opposed to the government's point? I think that the common meaning of terms is very important. I think that interpreting the terms of the tariff is very important. The product itself is not difficult to understand. The emery is attached to the bottom of the half of the egg. The problem is that in characterizing the product and trying to fit it into the tariff provisions, it gets to be very difficult because of the fact that note one is very restrictive. The government says, as I understand that they can correct me on that, that these are components of one instrument. How are we supposed to determine that that's just not correct? Well, it's not correct because the instrument is not used together. It's not unitary because you must use both the emery file, which can be the entire Pet Egg with the emery attached with or without the interior microfile, or the emery attached to the bottom. The report below said the egg must be closed and used as one piece in order for pressure to be applied comfortably to the pad. Which is correct, right? It is probably correct. Let's accept that as true. But a pad affixed to the bottom of the shell is a functional emery file as that term is defined. You don't have to give that up, do you? Excuse me? You don't have to give that up. You admit that ordinarily the emery pad is used when the egg is unitary. That's how you get by. I thought the real basis of your argument was that when you remove the pieces, so the top is here, this is only functional when it's removed. You cannot possibly scrape a callus off with the bottom. So you're saying this is an instrument. The government says at page 15 of its brief that each of the elements that comprise it is an instrument unto itself, right? Then it's a set.  Even though it's uncomfortable to use, but you're also, I believe, arguing that once you put it together, it's still an instrument. It's an instrument. And there's nothing that prevents that from being so. That's correct. And each of these instruments has a different working surface. It's used on a different part of the skin of the foot. One cuts and slices, the other abrades. So there's a fact finding, is there not, that the emery board is used to deal with calluses? The emery pad functions by scraping or abrading away small particles of dry or callus skin. So you would argue it's to take off both part of the callus, right? The microfile takes off the callus skin, and then the instructions advise to not overuse it when you see a redness stop. And if you wish, you can, as a finishing touch, use the emery abrasive, the emery file, but that would not be used where you have removed the callus. That would be used around it or in other parts of the skin of the foot. Well, the fact finding 14 says that the emery pad functions by scraping or abrading away very small particles of dry or callus skin. But the callus is removed with a microfile. Primarily. So you will not, yes, if you're not using the microfile, you can use it also on a callus, but you wouldn't be using it when you use the microfile. Let's assume that a person had a mild callus problem, and they used this piece to remove the callus, and fortunately for them, the callus doesn't come back. And so they empty out the stuff and get rid of it, and they put it back together, and the only use they ever make of the paddock ever again is as emery board. That's correct. That is certainly a possible and intended use of the product. Which would support the notion that this is an independent instrument. That's correct. For purposes of the emery board. Yes, sir. It seemed to me, Mr. Sheehan, that what you've got, and I think this is how you portrayed this in your brief, is you've got, in a sense, a handle, and you've got two tool attachments that can be used with this handle. You can use this callus remover attachment with the handle, or you can use the emery file with the handle, and it doesn't matter if this is left in place when you use the file. Well, we don't characterize this, Your Honor, as a hand tool with interchangeable tools. To use the microfile with the file, you cannot have... But doesn't that support your position? Excuse me? Doesn't that support your position? That it's an interchangeable tool? In effect, you've got a set of tools with a common handle. That's correct, as long as we're not thinking of it as a hand tool with interchangeable tools. I mean, they're two separate tools. Well, that's sort of why I bring this up, because this goes to the point that Judge Crost was raising, and that is how are we supposed to draw the line between something that is two separate instruments or one instrument with two components? Well, first... What guidance do we have in making that determination? I think the initial guidance is the common meaning of the terms that are used. I mean, an emery abrasive put on a backing, a paperboard or board or other material is an emery file. And you have the microfile, which is actually more similar to a rasp cut file than it is to other articles of cutlery, which is described in 82-14-1990. So you have to look at the common meaning of terms and then the applicability of Note 1 to Chapter 82, which we think the Court of International Trade has misinterpreted without analysis. Because if you look at the note in context of the headings and subheadings of the tariff and the explanatory notes, you'll get a very different picture of how it should be read. Don't you have another problem, and that is, even if you manage to convince us that this is a set, the requirement, at least at the time of these imports, was that the set must have a container. That is correct, Your Honor. So you may wind up winning the battle and losing the war if we conclude that there's no container. We think that the container issue is really not a significant issue in this case. The Court of International Trade. Of course you think that. But, I mean, there's a... Judge Verstein sort of showed her cards and how she felt about this. She did. She said she doesn't think that this cardboard box here as container would have to be interpreted as a matter of law, what a container is. That's right, Your Honor. And the example that's given in the tariff rating is a leather case or container like that. No, I don't believe that's right, Your Honor. What's the exact language? The exact language is the set must be imported in leather cases or other containers of types ordinarily sold therewith. So we know a leather case is a container. Excuse me? We know a leather case is a container. We do. But other containers is not. But assume that I'm interpreting this by getting some information in my mind as to what a container is by thinking about the leather case. In other words, something other than packaging. Yeah, exactly. So what I want to do is just ask you, because I'm sorry I've been using that most of your time. That's the way it works. We get to ask the question. That's perfectly all right. So let's just assume that we'll decide on the briefs whether or not the box constitutes a container. But there's also the pedes. Yeah, let's look at whether or not the pedes can be the shell. Now, I don't think you exactly made this argument, but I'm dumping out of my shell a couple of the extra pads, which come along with it, right? And now, thanks to Judge Lynn, I'm dumping out this piece because it's separate. So what I'm going to do is I'm going to take these two pieces that otherwise don't seem to have much purpose in life, especially if I haven't already affixed this, and I'm going to insert into it, Ms. Rubin, look. I'm going to insert into it the emery pad, and now I'm going to insert into it the thing, and I'm going to close it up. And have I contained the scraper and the emery board inside of here? You're making my case, Your Honor. That's exactly the argument we believe should be accepted, because it's unique, but it really is wonderful. The fly in your ointment, sir, is in order to win on the set, you had to convince me that this unitary item is a separate item. Right. Now, if you go back and think about the leather container, the leather container itself can't... It's a container because it contains things, right? That's correct. And so you say, well, the egg itself, which is actually an instrument, can't contain an instrument, and there has to be some independent structure that encloses this, because you've argued that this is an independent instrument. That is the way the Court of International Trade interpreted the requirement, but the requirement is not that specific, and since the instrument is not being used... The container is what is used to hold the working surfaces when the product is not in use. It can also be a holder when the product is in use. In other words, there's a time element here that certainly makes it possible for what is a holder in use to be a container when not in use. This is not unique in that respect. And it is a type of container in which these products are typically sold at retail today. I mean, there are many types of containers for pedicure instruments these days, and this is a little more innovative than most, but it's certainly not unusual. But your argument is it's novel because it doesn't require a leather bag... That's correct. ...or a plastic enclosure or a beautiful Gucci leather case, which you could lose. That's exactly right, and the price reflects the fact that it's really a two-in-one, but it is a container when you're not using it, You're actually paying for the container. You would have had to be an independent container. Exactly, and it's probably much more durable than cheap containers like a cheap vinyl bag or the kind of container you might have scissors in, which would be cheap vinyl with a fold-over flap. So it serves the purpose beautifully, and it is, we might say, typical of the kind of containers that we see today, which are very innovative and inexpensive. So we think that the container requirement is not a significant obstacle in this case. We believe that the appellants... Do we know how many entries are covered by this ruling? Excuse me? Do we know how many entries are covered by this ruling? I mean, we've taken some fascination with your product, so we sort of look around and we gather that a whole lot of these things get sold. There are not too many entries. And this ruling going back several years, I mean, is there a whole bunch of money involved here, or do you have eight or nine or ten entries? There are a significant number of entries. The number of products on the entries subject to the court case are not that large, but yes, there is a significant amount of volume. And I don't know whether the volume is tapered off or not, but the product is very active in that case. Now, if you win this case, can you go back and reopen entries from the past? How long have you been suffering under this? The entries... You're allegedly incorrect. The classifications have been protested, so they're subject to review and subject to the decisions of the court. So that the decision we make in this case, while it does not directly affect the other entries, could have an impact. I'm not sure whether later entries have been protested or not. I'm focusing on the period where the Chapter 99 provision was in effect. So I can't say for sure whether it would affect later entries, but it would certainly affect prospective entries. Okay. You're well in shape over your rebuttal. We'll restore a couple minutes, and let's hear from the government. Thank you. You never know. You may want to play with the sample. May it please the court. First, I think he's the nail on the head. This product is comprised of multiple components. It's not a single instrument. The undisputed evidence shows that the pet eggs have just one identified function, smoothing calloused feet. The complete pet egg has two... No, you're saying it's not a single instrument. It is a single instrument. No, it is a single instrument. It's composed of multiple parts? Multiple components, yes. But it's a single instrument. It is absolutely a single instrument comprised of multiple components, which is not at all unusual. There's a lot of single instruments that have multiple components. Like a car, an automobile. Tons of different things that are classified as single unit. And it's actually very important to distinguish here between instruments and components of instruments because this court has not previously had the opportunity to either define instruments or to distinguish between components of instruments. I have a hypothetical for you. And it's based on the statement in your brief that I cited to your adversary on page 15. If each of the elements that comprises an individual is an instrument unto itself, then it could be a set. That would be a set. Okay. Imagine that I have a screwdriver. The screwdriver has a handle that's not round. It's rectangular or square. And it's removable. And what is in the handle of the screwdriver is a level because it allows you to know whether or not what you're doing is level or not. And it's going to be classified under a heading that deals with tools, parts, whatever. So when I have this screwdriver that's working like this as a whole, right? It's a separate instrument, right? Correct. Okay. When I remove the handle and I put the level on the table, that's a separate instrument, isn't it? Hypothetically... I'm just asking. I don't have a screwdriver that's... I ought to get a patent on this because I'd make a lot of money. I could use one of those. You unscrew the handle, and it's rectangular, and you put it on the table. It tells you if it's level. I would speculate that that would be potentially a set or more likely analyzed as a composite good. It's an instrument. It's a definition of instrument. It's an instrument. However, they're two separate functions. Unlike the... Wait a second. I just want to stick with the instrument  So this is an instrument, right? A level would presumably be an instrument. To connect this to our case, this instrument is the equivalent of this. This screwdriver that has a detachable handle that creates a leveling instrument is the equivalent of the PedEgg altogether, which does the mild abrading with the memory board, right? Yes, except that what's in your left hand does not have the memory pad attached right now. I do. I do have it. It's on the bottom. Oh, it is there? It hurts. Mine's really black. It's the same color. Because then that way, you know, if you're in public and you're doing, people don't know that you're white. All right. So here's the deal. Now I'm going to take this... I'm sorry. We're going to take this apart, right? And when I take this apart, it's like my level. It's a separate individual item that worked. No, you're wrong. No, no, the level. This worked. This will only work when you take it apart. And guess what? My screw... My thing here, I can probably make a bend in my blade of my screwdriver so that this won't work unless you take it apart. That may be. But there are numerous instruments, I can think of probably four or five off the top of my head, where the way the user physically configures the item does not make it anything other than... Well, the reason why I have taken you through this exercise and you haven't convinced me that you're coming out on the right side of it is that this is the equivalent of this, and this is the equivalent of this. And if this is a set, which your brief says it is, then why isn't this? Well, for a number of reasons. Number one, the entire instrument, the PEDEG, as sold, not only does Telegram refer to it as a precision instrument, not instruments, not set, doesn't refer to it as a set anywhere, but that's just as an aside. It has only one function, and you can see very clearly from the instructions, particularly on page 145 of the appendix, it is only, solely, exclusively used to smooth talus feet. But what about the finding of fact that says that the emery board exists to abrade away small particles of dry skin, not talus skin, dry skin? Look at statement of fact. I understand. Statement of fact number 20, which the party stipulated to. Number 20? I only have 17. Judge Rastani does cite to number 20. I'm looking at her opinion, and the numbering stops at 17. It's also on page, party stipulated, it is on page 168 of the. 28? 168 of the appendix. 168. And it's going to be number what? 20. Number 20 on that nice long note? Correct. Denies. What does it deny? At 116. No, 168. 168. And we admitted this. This is a statement by Telegram, and we admitted this statement. Yes, it says right there, the same thing I read. It says talus skin. It says dry or talus skin. Right. There's a difference between dry skin and talus skin, correct? That may be. But it is yes or no. No, I don't think. Well, then why does it say dry or? I don't know. If you say apples or oranges, the apples are not apples, and the oranges are not apples. Right? You also have another finding listed in the opinion as finding a fact eight. The metal object's function is to slice away very small, thin pieces of talus skin. Correct. And if you look at the instructions that come, with every pet egg on page 145 of this. The classification isn't restricted by the instructions, right? Excuse me? The classification isn't determined by the instructions. No, but just the. You mean you can instruct people to use this as a toy? Absolutely, but. So why can't we stick with the findings of fact? Judge Lynn has pointed out that the judge made an express finding of fact about the function of the grater. Of this microfine grater. It's a knockoff. It's a finding of fact. OK. And then you have a separate fact finding in 14 with regard to the Emory board. I understand. And the Emory board says you don't need to use this for taluses. You can use it for dry skin. For dead skin. So that pretty much blows out your argument that it's all for one thing, i.e. taluses. Well, I disagree. Well, how can you? Because the undisputed evidence, the documentary evidence that's included with every single headache specifically says, warning, intended for use on calloused feet only. Do not use on healthy skin. And that is with the Emory board. Dry skin is not healthy skin. It says use on calloused feet. Do not use on healthy skin. So what happens is you work the callous down to the point where it doesn't have a whole lot of thick callous on it, but it nonetheless is dry. And so they say this is your polish it off. You basically use a pickaxe to take the rock away. And then you take the sandpaper to kind of smooth it down to where you want to get. Exactly. But don't do it on skin, on feet that don't start off with any callous. It's two stages of the exact same function. And it's a single instrument that performs these. After you get rid of your pet callous, you only had one in your whole life. No, Your Honor. And it never came back. Can't you use this to smooth up your skin, make it feel baby soft? Presumably. And you don't ever need to use this. You use this to grate cheese when you go out at night if you want. What an image. Well, I know. It works. If it's never been used to clean it off, it's never been used for a callous. It'd be super. You go in a restaurant and grate your cheese, and you're ready to go. Telebrand is listening. Yeah, but I mean, that can be in their advertising, right? It'd be good lemon zester. Very good. I suppose. But you haven't convinced me on the set side of supplying the thing itself can't be a functional instrument. Well, for one thing, you need both halves of the egg. You need both halves of this plastic piece, despite what Telebrand says in their reply brief, to use either of the instruments, either of what they're calling the instruments. Why do you need the top piece to use this? Because I don't know if you have the white one, because I have a sample. But right inside, it warns that the blades are sharp. The instructions say you must close these two up. No, no, when you're going to use this, you have to take this off. But that does not mean that the cover is not an integral part of the intended function of the product. Yes, you have to remove the cover, but because the blades are sharp, when you are done, in order to prevent damage to the blades and in order to prevent damage to surfaces that this might be set on, in order to prevent damage. That's in order to store it when not in use. It's not just... It's not in use when it's in your drawer at your vanity table. Granted. If you read Appellant's brief carefully, you will see that what they're calling the two separate instruments are the top half with the perforated metal by itself. I think it's on page 6 of their reply. And the other instrument is the bottom half of the plastic egg and the emery pad by itself. That's not accurate. First off, as you pointed out, Judge Clevenger, you cannot use, and the instructions are very clear, undisputed, that you cannot use the emery portion without both pieces of the plastic egg. Well, you can't. You shouldn't if you want to do it comfortably and probably effectively. The instructions at page 145 specifically say place the top cover on the pet egg to use the emery pad. There might be a fugitive use. If you move the top part, it hurts your hand. I don't want to play with the samples too much. But it's not intended. You may want to come back to sit in a second. But I'm looking at the presiding judge's clock. And it says three minutes and 23 seconds left. So I want to come to the container issue, if you don't mind. Absolutely. And assume for purposes of argument, I grant you that the cardboard box that comes in is not a container. Correct. So why isn't the thing a container when I'm putting into it a bunch of these stairs and I'm putting this thing into it and then I'm closing it up? It does not identify it as a retail set in any way. That's a problem. I'm asking about a container. Is it a container? No. It contains skin shavings. It may contain it. Skin shavings are not. They aren't part of the instrument. They are part of the benefit of using the instrument. It is not the type of container. I just want you to slow down for a second. And I got these two pieces that otherwise have no central purpose in life when I buy. I mean, other than maybe to put marbles in or something like that. It doesn't have anything to do with a pedicure. And I put in it a few of these pads and I put in it to the grainer. And then I close it up. Are these two pieces, when put together, a container? Yes or no, a container. A container, yes. A container sold with retail sets that identify as a retail set? Absolutely not. Sold with retail sets. The provision refers to containers of types ordinarily sold therewith in retail sales. Now, when I buy marbles at the CVS for my grandkids, there's usually a little plastic box that has the marbles in it. OK. And we all know that plastic is a form for making containers for all sorts of things. Right. So, is it a container of the type ordinarily sold therewith in retail sales? No. Why not? It may be. If Telegram wants to start marketing plastic eggs with marbles in them and calling it a marble set, I don't know how that would be classified. That's not responsive to my question. They're marketing this as what they claim to be a set and what they claim to be a container. What they claim to be, for purposes of this litigation, when suddenly noted that there was no container. But this is part of the instrument itself. It is not a container for the instrument. It is counterintuitive to say that the type of container that identifies something as a set is in itself. So, the container has to be something different than the instrument. It has to identify the product as a set for retail sales. If you look at general rule of interpretation, 2B that refers to sets, different types of sets, it says put up for sale, set put up for retail, package for retail sales. I'm misquoting, but it's about that. The packaging, the container, actually has to identify the product as a set. We have examples in the joint appendix of the type of pedicure set that would be packaged for retail. Right, but that was off Ms. Campanelli's declaration? Correct. Right, and Ms. Campanelli in paragraph 8 says, containers are separate commodities. Now, by that, I think she means separate from what? From the instrument or the set itself. Right. Such as a case or a box that's used to keep the instruments together. So, you're saying, listen to what I said to your adversary a minute ago. He contends that in a unitary form, this is an instrument because he has to get there to win on set. If we take Judge Rastani's fact-finding to be correct, that you have to put the two together to use the Emory board? You do, according to the instructions. So, this becomes a piece of the thing, so it's an instrument. So, your argument would be Ms. Campanelli is saying, in this particular case at least, the unit itself can't be a container because it's actually more than a container. It's an instrument. It's part of the instrument. It is not a set that identifies. It's not a container that identifies. It's a separate individual instrument, according to your adversary, because otherwise he won't have a set. I'm a little confused. You have the fact-finding, if you want to call it that, that this piece that's used for the Emory board function really won't work unless you put the thing together. So, that means that in order for this to be a separate Emory board, it has to be put together. Correct. And that's his best argument as to why there's a set is that everybody admits that this is an instrument, right? And you've said if he has two instruments, he wins on set. He potentially wins on set, but more likely it would be analyzed as a composite good. Composite good? Yes, you would also have to find that the bottom of the Emory pad is itself an individual instrument. And that's amazing. Why? Because a set has to be comprised of two individual instruments with their... But this is an individual instrument in order to do the Emory board. Okay. It only works, according to Rastani, it only works if you put it together. Which incorporates the other so-called instrument. So, it's a unitary whole that itself is a single instrument that has a single function. Or the two instruments with the shared component. Two at the top. In which case it would be a composite good. What does it make a... Tell me about composites. Well, a composite would be two products that would be classifiable each in different provisions. Because... We're not asking that. We're asking whether or not it's a set. We're asking whether or not it's two different things. One's an Emory board, and one's a file, and one's a cutter. It's not a set. At most, it's an unfinished instrument because the entire product is, as explained before, a unitary whole that has a single function and works in a single... It's very similar to the two-way buffers that we've discussed in our brief. It's similar to other products that have two functional sides for... Well, that comes back to your argument that the only thing it's doing is attacking calluses. And we pretty much demolished that a few minutes ago. Well... Based on the fact finding. Then... But the undisputed documentary evidence says it's only to be used on callus feet. And the... When you use it on callus feet, what you do is you whack the callus off, and then you do the finish work. No, the Emory pad. The entire product. The instructions refer to the product as a whole, which would include both the cheese grater, foot file, as well as the Emory pad. The instructions refer to the unitary whole. That the initial callus removal is done with the metal part, and the finishing part of the callus removal... My literature says it's a screwdriver. And mainly you use it for doing screws, but if you want to do a little leveling, you can do that too. Two separate functions. Completely separate functions. Two separate functions in connection with putting a wall up or something. Sure. And that's similar to the erroneous analogy that Telegram's had to a product that includes a shoe horn and a clothing brush. Two separate functions used generally for grooming, but not... Well, it just depends on how general your subject is. Well, and that's where the court has come in and... I mean, like with bathing, if you're taking a shower, you can have soap, and you can have, you know, hair conditioner, all kinds of different things. So... It depends on how you define the purpose. Right? Not specifically. It has to be very closely related. The functions of the two things? Two... Can it only be a set? No, no, no, not so much... Well, yeah, it could be a set, but we're not talking about that. There's a world of difference between taking a callus off and cutting a toenail. There is, and there's... And yet when you see the sets that have callus removers and toenail sets in, there's a wide difference in the effect that the tools are for. Sure, but when you see... See, I got my screwdriver in my level, so that doesn't make it not a set. But... When we're talking about a single instrument with two functional working surfaces... Which we did. And I pretty much got you to admit that my screwdriver is a set. It's got the level in it. The functional working surfaces will be closely related. For example, a scrunch that has a smooth sponge on one side and a more abrasive one on the other side. Where in the tariff and the classification do you get support for saying that this has to be so? It's the distinction between an instrument and a component of an instrument. An instrument... We're talking about what constitutes a set. What constitutes a set? Disparate instruments. But first you have to determine whether, in fact, the PEDEG is a single instrument or incorporates two very distinct instruments and that together they are contained in a container that identifies... Your argument hinges on the fact that I have to keep a lid to store it. No, Your Honor. My argument... Yes, that's what you said a minute ago. Because everybody admits that the PEDEG, when you take... This was a topple. That's a separate instrument. It's not a PEDEG. The complete PEDEG includes two working surfaces, two halves of a plastic egg, and that's what Telebrand itself calls the precision instrument. The entire product is a unitary whole that is configured for use in potentially two separate ways. One for the beginning of the job and one for the end of the job doesn't make it anything other than a single instrument. One final thought. One final thought. I just want to leave you with the point that the shell is not divided into two halves. It is an entirety. Not meaning entirety in the classification sense. You need both. You need all pieces for this PEDEG, this precision instrument, to function well. I also want to note that Telebrand itself has never explained how... They've asserted it, but they've never explained how either the plastic shell or the cardboard box actually identifies this product for retail sale or as a retail set. Why is that important? Because it has to be the type of container that is normally sold... Ordinarily sold with the set in retail sales. Comparable to the type of leather container that would be sold with this type of product. But you meant that a plastic box. Let's assume that the PEDEG had come and this box had been plastic. And the box was plastic and it says, container for storing PEDEG when not in use. That would be a container, right? That would be possibly a different case, but there's no reason why disposable cardboard packaging would be... I'm granting that the cardboard doesn't qualify, but what I was taking you to say was that the fact that the PEDEG is plastic somehow means that it can't be a container because it's not leather. No. You weren't trying to say that. The PEDEG is part of the... The PEDEG is the instrument. It doesn't... It's not a container for the instrument. The instrument and the container must be separate items. And if they put it in a plastic egg that was slightly bigger? That... If it were slightly bigger, then it would be a container, right? You'd still have to determine whether it was a set. I'm talking about assuming it was a set. Assuming it was a set, we would take another look at that, but that's possible because it would be durable and it would be the type of container that holds this particular product. Okay. Thank you. Thank you. I think we have the argument. Store three more minutes to kind of even it out a little if you need it. Thank you. I think the argument we just heard illustrates the fundamental problem with the lower court decision, which is that there's not so much analysis in it as there is statement of conclusion. We find that with respect to their findings on the interpretation of Note 1, and we also find it with respect to their characterization of the container as not the type of container described in the heading. The heading has no standards that really limit the use of a particular type of container other than the market standard. And there's no question that the head egg itself, the shell, and the box both identify this product as a set. They combine the various elements together. The mention of composite good has no place in this case when one interprets Note 1 properly in perimeteria with the terms of the headings and the explanatory notes of Chapter 82. It's not a container. Say, for example, you had a heading that dealt with importing articles for holding flowers, vases. But it said vases, you know, with a container. The fact that the vase will contain water doesn't make it a container to contain the vase, right? The vase is a container itself. That would suggest that you would have to have some additional item around it. I mean, so, if it said vases with containers, right, then you wouldn't be able to argue that the vase, assuming it came in a cardboard box and you said that doesn't count, we threw the cardboard box in, but you would say, well, the vase itself contains water. And the whole purpose is to contain water, to contain flowers. But the vase couldn't be a container, right? That's correct. You'd need a separate thing to contain it. That's correct, Your Honor. I think that's her argument, is that your egg is a unitary thing, but it needs a little plastic egg to go around it. Well, we're dealing with two pedicure instruments that have a holder, which incorporates the working surface when in use, but it's still a container when not in use. And there's no limitation that would prevent that from being the container that satisfies the requirement of the note of the heading. The time element is very important. They both identify the product as a set. In terms of the composite good argument, the explanatory note to GRI 3B says the rule can only take effect provided the terms of the heading or section or chapter notes do not otherwise require. Clearly, if one interprets Note 1 to 82 as the restrictive note it is in terms of the text of the headings and subheadings and explanatory notes, that note would not permit the invocation of the composite goods GRI, GRI 3B. Furthermore, I go back to the point that the instructions do not necessarily define the term instrument in this case. When it comes to the Emory file, which is the Emory bracelet attached to a rigid base, the bottom of the pedag with the Emory pad attached is by definition an instrument in an Emory file. And I refer you to the blue brief, page 14, where we discuss those terms. We have the argument to thank both counsel, the case is submitted. That concludes the proceedings for this morning.